United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SANTOS F. ASCENCIO, | No. C 13-3433 PJH (PR) |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
|   vs. | |
| M.E. SPEARMEN, | |
|     Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and lodged exhibits with the court, and petitioner filed a response. For the reasons set out below, the petition is denied.

## BACKGROUND

After a jury trial, petitioner was found guilty of two counts of rape in concert and was found not guilty of one count alleging that he penetrated the victim. Clerk's Transcript ("CT") at 177-80. Petitioner was sentenced to fourteen years in prison. CT at 182, 184. The California Court of Appeal affirmed the conviction, and the California Supreme Court denied review. *People v. Ascencio*, No. A133182, 2012 WL 4127953 (Cal. Ct. App. Sept. 20, 2012); Resp. Ex. G, H.

The California Court of Appeal set forth the following background:

> The victim testified that on the afternoon of Sunday, August 23, 2009, she was at a bar in Oakland where she met a man who bought her a drink. She stayed in the bar until it was dark outside. She left the bar feeling very intoxicated and entered into the back of a car. At this point she lost her memory.
>
> When the victim regained awareness of her surroundings, she found herself still intoxicated lying in a small room in the presence of appellant, Jorge

Ramos, and a man later identified as Hosmin. She tried to walk out of the room, but the door was locked. At least one of the men told her she could not leave. One of the men removed her pants and underwear against her will. The three men then each penetrated her vagina with their penises while she screamed. The assailants told her they would beat her up if she continued screaming. She tried pushing each of them off of her, but was still intoxicated and not strong enough to move them. She specifically remembered appellant being on top of her, facing her as he raped her. She remembered him putting a shirt over her face so she would be quiet. She also recalled him saying, "[B]e quiet or I will beat you up." The men eventually stopped raping her and left. The victim went outside screaming.

A neighbor living in the room upstairs testified that he heard the victim's screams and telephoned his landlord and asked him to call the police. After calling the police, the landlord went outside. While outside, the landlord saw the victim wearing only a blouse. She ran to the landlord, and screamed in Spanish, "Jorge, malo muchacho," which translates, "Jorge, bad boy." Shortly thereafter, the police arrived and arrested Ramos.

The prosecution called Ramos to testify. He had pleaded guilty to raping the victim and at the time of trial was serving a state prison term. He testified to a different version of the facts than the victim's testimony. Ramos stated that on August 23, 2009, at two or three o'clock in the afternoon, appellant arrived at his house in a car with Hosmin and the victim. After they got out of the car they drank together for several hours. Hosmin and appellant told the victim they were going to have sex with her, then threw her down and took her clothes off. Appellant held her down by her hand and foot while Hosmin had vaginal sex with the victim. The victim tried to close her legs, but appellant punched at her legs to open them. The victim screamed during the rape so appellant forced a shirt over her mouth to muffle the sound. Hosmin told Ramos he ejaculated. After Hosmin was done, Ramos put his penis in the victim's vagina. During this rape, appellant was on top of the victim with his back to Ramos. Appellant held the victim with one hand and put his leg on her stomach. Ramos saw that she was crying, gave her her clothes, and let her go. Appellant made no attempt personally to rape the victim. Hosmin and appellant left in Hosmin's car. Then the victim went outside screaming.

The victim identified Ramos as one of the rapists to the responding officers. After the identification, she was taken to a hospital where a physician assistant performed a Sexual Assault Response Team examination (SART exam). The physician assistant documented injuries and collected potential evidence of the rapes from the victim. The physician assistant collected two oral swabs, four vaginal swabs and one cervical swab, as well as swabs from the victim's underwear, bra, top, tank top, and jeans.

A criminalist analyzed one of the victim's vaginal swabs and four samples from her underwear collected during the SART exam, along with a penile swab taken from Ramos. Appellant was eliminated as the source of any biological material in all samples the criminalist examined. The criminalist found sperm on underwear samples and on the vaginal swab that was not Ramos's but was all from one unknown individual. The unknown donor's sperm was also found on Ramos's penile swab. The victim could not be eliminated as a source of other biological material found on Ramos's penile swab. The criminalist also located DNA foreign to the victim and the unknown donor on underwear samples. Ramos could not be eliminated as the source

of that DNA.

The victim testified that she abstained from sex prior to the rape and in the months following the rape. However, about four weeks after the rape she experienced signs of pregnancy. She went to her doctor and was referred to a family specialist. The family specialist confirmed that she was pregnant. An abortion was performed the following day.

About one month after the rape, the victim was driving with a friend and identified appellant standing outside on a street in Oakland. The victim abstained from reporting the incident because she was embarrassed. However, the victim saw appellant again on July 9, 2010, and this time waved down an officer. Officers apprehended appellant and showed him to the victim, who identified him. The police took appellant into custody.

Appellant testified on his own behalf at trial. He denied raping the victim or holding her down while she was being raped. He testified that on August 23, 2009, he went to manage a soccer team at 10:00 a.m. He watched matches on the field until around 5:00 p.m. He then went home to eat dinner and watch a Mexican soccer league game with his brother and his wife until about 8:00 p.m. He did not drink all day. He went to bed around 9:00 p.m., but before he could fall asleep he got a phone call from Ramos. Ramos told him he was alone and wanted him to come over to drink some beers.

Appellant walked over to Ramos's house where he saw Ramos, another man, and the victim. He grabbed a beer and sat down on some stairs next to a bathroom. The unidentified man, Ramos and the victim were all laughing together until Ramos picked up the victim and took her towards the bathroom. The victim told him to let her go. Appellant stood up and pulled Ramos's shirt. Ramos let go of the victim and called appellant a "fag." The victim and appellant went outside where appellant told her "she should leave because nothing good could happen there." She responded, "nobody messes with [me]," and she eventually walked back into Ramos's room. Appellant went home.

*Ascencio*, 2012 WL 4127953, at *1-2.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09

(2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

## DISCUSSION

Petitioner's sole ground for federal habeas relief is that the admission of the abortion records violated his rights under the Confrontation Clause pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004) and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

**Legal Standard**

In *Crawford*, 541 U.S. at 53-54, the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." The Confrontation Clause applies to all "testimonial" statements. *See*

4

*Crawford*, 541 U.S. at 50-51.  "Testimony . . . is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Id.* at 51 (alteration in original) (internal quotation marks omitted); *see id.* ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.").

In *Melendez–Diaz v. Massachusetts*, 557 U.S. at 309-10, the Supreme Court held that forensic laboratory certificates of analysis fell within the core class of testimonial statements covered by the Confrontation Clause.  In *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2715-16 (2011), the Supreme Court held that the admission of a forensic lab report completed by a non-testifying analyst through the surrogate testimony of the analyst's colleague who neither performed nor observed the procedure violated the Confrontation Clause.  In *Williams v. Illinois*, 132 S. Ct. 2221, 2236, 2243 (2012), a plurality of the Supreme Court held that an expert's testimony premised on a report generated by another laboratory did not violate the Confrontation Clause on two alternate grounds: (1) the report was not being offered for its truth but only for the limited purpose of explaining the basis of the expert's conclusion; and (2) even if the report had been offered for its truth, it would not have been a testimonial statement because it had not been produced for the primary purpose of accusing a targeted individual.

Confrontation Clause claims are subject to harmless error analysis.  *Bullcoming*, 131 S. Ct. at 2719, n.11; *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (post-*Crawford* case).  The standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury.  *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

**Background**

The California Court of Appeal set forth the relevant background:

> At trial, the prosecution sought the admission of medical records indicating that some time after the rapes, the victim had become pregnant, and thereafter sought an abortion.  The prosecution offered the medical records

concerning the abortion into evidence under the official record exception to the rule against hearsay to corroborate that vaginal penetration occurred. Appellant's trial court counsel objected on grounds of relevance, Evidence Code section 352, and hearsay under both the federal and state constitutions. Counsel clarified that the hearsay objection was "based on confrontation grounds" and cited "*Crawford v. Washington* [ (2004) 541 U.S. 36, 53-54 (*Crawford*)], a United States Supreme Court case." He claimed appellant had a right to cross-examine the custodian of record of the abortion documents. The court responded that a custodian's testimony was not necessary because the records fell under the official records exception to hearsay. The court further responded, and the prosecution agreed, that the victim testified about the abortion and was available for cross-examination on the issue. The court admitted the evidence.

*Ascencio*, 2012 WL 4127953, at *6.

**Analysis**

After setting forth the relevant state and federal law regarding the Confrontation Clause, the California Court of Appeal denied this claim:

Appellant argues the abortion records, like the sworn "certificates" attesting an analyzed substance was cocaine in *Melendez-Diaz*, and the certified blood-alcohol analysis report in *Bullcoming*, were "testimonial" and that admitting such records prepared by witnesses not subjected to cross-examination violated appellant's right of confrontation. However, there is no evidence in this record that the victim's medical records were sufficiently formal for confrontation clause purposes; nor is there any evidence that the records were made for purposes other than to facilitate her medical treatment. Indeed, it appears no certificates or affidavits were created in association with the abortion records. There is nothing in the record suggesting that the victim's medical records were signed under penalty of perjury. Further, there is no indication that the records were "'made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial' [citation]." (*Crawford*, *supra*, 541 U.S. at pp. 51–52.) FN5

> FN5. A copy of the admitted report is not contained in the record on appeal. "It is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal. [Citations.]" (*People v. Akins* (2005) 128 Cal. App. 4th 1376, 1385.) "'Failure to provide an adequate record on an issue requires that the issue be resolved against the [appellant].' [Citation.]" (*People v. Seneca Ins. Co.* (2004) 116 Cal. App. 4th 75, 80.) The medical records were described only as "abortion records." The record on appeal does not mention any certificates, affidavits, or any other marks of "'formalized testimonial materials'" associated with those records. (*Crawford, supra*, 541 U.S. at pp. 51-52.) In conformity with the cases cited above, we will not presume the abortion records contained any "formalized testimonial materials." (*Ibid.*)

. . .

6

> Furthermore, we conclude that even if the trial court erred in admitting the records, the error was harmless beyond a reasonable doubt. (*Cage*, *supra*, 40 Cal.4 th at p. 991 [alleged violations of the confrontation clause are reviewable under a harmless beyond a reasonable doubt standard]; citing *Chapman v. California* (1967) 386 U.S. 18, 23-24.) First, appellant did not dispute the victim's testimony that she became pregnant as a result of the rapes and sought an abortion. Thus, the abortion records only corroborated the victim's testimony regarding an uncontested issue, and in that capacity, it was cumulative. (*People v. Houston* (2005)130 Cal. App.4th 279, 296 ["The admission of cumulative evidence, particularly evidence that is tangentially relevant to establishing a defendant's guilt has been found to be harmless error"], citing (*People v. Jenkins* (2000) 22 Cal.4th 900, 1015-1016.)
>
> Second, the abortion records only documented that an abortion had occurred and could not speak to the critical issue at trial-whether or not appellant was one of the perpetrators of the sexual assault. Therefore the records had negligible, if any, value in helping the jury determine whose testimony was more persuasive on this point; appellant's testimony or the victim's testimony. In fact, when the prosecutor argued in his closing argument that the jury should believe the victim's testimony, he evidently did not feel the need to rely on these records at all, making only a passing reference to "the aborted pregnancy."
>
> Third, to the extent the victim's general credibility was at issue, we reiterate that this was not a "he said, she said" case. Ramos's eyewitness testimony corroborated the victim's testimony in substantial detail and described appellant taking an active role in aiding and abetting the rapes in concert. Appellant's trial counsel had ample opportunity to, and repeatedly did cast doubt on the victim's credibility. He pointed out that she had been drinking and had trouble remembering much of the night. Consequently, even if the abortion records were erroneously admitted, they had only marginal significance on the jury's assessment of the victim's credibility because they only served to corroborate the victim's testimony on an uncontested issue.
>
> Accordingly, for the foregoing reasons, we conclude any conceivable error stemming from the admission of the abortion records was harmless beyond a reasonable doubt.

*Ascencio*, 2012 WL 4127953, at *7-8.

Petitioner has failed to show that the state court opinion was an unreasonable application of Supreme Court authority. As noted by the California Court of Appeal, there is no indication the abortion records were prepared for the primary purpose of accusing a targeted individual. Petitioner has never provided the records to any court, and by all indications the records were prepared for the sole purpose of facilitating the victim's medical treatment. Petitioner has also failed to address how the admission of the abortion records adversely affected the case. *See United States v. Bernard S.*, 795 F.2d 749, 756 (9th Cir. 1986) (finding Confrontation Clause violation to be harmless because admission of

7

medical records, even if improper, "was of peripheral significance to the case"). Moreover, the victim testified that she had an abortion (Reporter's Transcript ("RT") at 128), and petitioner retained the ability to cross-examine her regarding this testimony. The victim was cross-examined regarding being provided the "morning after pill" when she was taken to the hospital after the assault. RT at 130.

The Supreme Court has also held that statements made to medical providers for purposes of diagnosis or treatment are nontestimonial and therefore do not run afoul of the Confrontation Clause. *See Michigan v. Bryant*, 131 S. Ct. 1143, 1157-58, n.9 (2011) (statements made for purpose of medical diagnosis are "by their nature, made for a purpose other than use in a prosecution"); *Melendez-Diaz*, 557 U.S. at 312, n.2 ("medical reports created for treatment purposes . . . would not be testimonial under our decision today"); *Giles v. California,* 554 U.S. 353, 376 (2008) ("[O]nly *testimonial* statements are excluded by the Confrontation Clause. Statements to ... physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules").

The state court opinion was not contrary to Supreme Court authority as the records were prepared for medical treatment. Even if the trial court did err, petitioner has failed to show that the error had an actual and prejudicial effect upon the jury because the abortion records were of a minor significance to the case.[1] This claim is denied.

**Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the

---

[1] Pregnancy was not an element of the offenses of which he was convicted, and he was found not guilty of penetrating the victim. The victim's testimony of the assault was also corroborated by one of the other assailants.

8

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.  Here, the court finds that petitioner's sole claim in the petition fails to meet this standard and accordingly DENIES the COA.  *See generally, Miller-El V. Cockrell*, 537 U.S. 322, 327 (2003).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A certificate of appealability is **DENIED**.  *See* Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 26, 2014.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.13\Ascencio3433.hc.wpd